

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SK:GK/ADG
F. #2019R00549

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 25, 2022

By ECF

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Estevan Acosta
      Criminal Docket No. 19-500 (FB)

Dear Judge Block:

  The government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for March 11, 2022, at 3:00 p.m. On September 15, 2021, the defendant pleaded guilty pursuant to a plea agreement to Counts Three through Six of a six-count indictment, charging distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). For the reasons stated below, the government respectfully submits that the imposition of a significant custodial sentence below the applicable United States Sentencing Guidelines (the "Guidelines" or U.S.S.G.") range of 151 to 188 months' imprisonment is reasonable and appropriate in this case.

  I. Background

  The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR"), to which the government has no objection.

  The Federal Bureau of Investigation ("FBI") began investigating the instant offense in February 2019, when an undercover FBI agent signed into GigaTribe, a peer-to-peer file sharing platform, and observed that user "Sega628"—later identified as the defendant—had made folders containing child pornography available to others to view and download. (Presentence Investigation Report ("PSR") ¶ 9). A different undercover FBI agent subsequently sent the defendant a friend request on the GigaTribe website, which the defendant accepted. (Id. ¶ 10). The undercover FBI agent then sent the defendant the following message: "Hey man not

sure how pervy you are. If you are a perv id love to chat. I'm a dad in ny/usa and pervy as fuck. Hit me on kik[1] if you want im 'stevantly.'" (Id.).

On March 7, 2019, the defendant sent a message via the Kik application to the undercover agent in which he stated that he was interested in "young diapers and spanking." (PSR ¶ 11). The defendant wrote that he had "pics and videos" and asked about the undercover agent's children. (Id.). The undercover agent responded that he had an eight-year-old boy and a ten-year-old girl, and that his girlfriend had a three-year-old daughter; the undercover agent claimed to have sexually abused all of them. (Id.).

On or about March, 11, 2019, the undercover agent asked the defendant if he ever traded on GigaTribe. (PSR ¶ 12). The defendant offered to log in so that the undercover agent could download some of his files, and further explained that other than Kik, which was on his cell phone, "everything else is on my external that's hooked up to my laptop." (Id.). A few minutes later, the undercover agent logged into GigaTribe and downloaded approximately 116 image and video files from the defendant's account, the vast majority of which consisted of child pornography and child erotica.[2] (Id.). The defendant stated that his shared drive contained "anywhere from fifty to a hundred gigs" of material in total. (Id.).

The defendant shared child pornography with the undercover agent on multiple other occasions in March 2019. On March 15, 2019, the defendant contacted the undercover agent and asked if he was around to download more files. (PSR ¶ 14). The undercover agent subsequently logged into GigaTribe and downloaded 86 more image and video files, many of which contained child pornography.[3] (Id.). Later that same day, the defendant sent the undercover agent a link containing 223 video files containing child pornography. (Id.). On March 18, 2019, the defendant sent the undercover agent another link, which contained approximately 100 videos of children being spanked, including some videos depicting children who were fully or partially nude. (Id. ¶ 15).[4]

The defendant and the undercover agent also discussed the defendant's sexual interest in the undercover agent's fictional children, whom the undercover agent stated he

---

[1] Kik Messenger ("Kik") is an instant messaging application designed for use on smartphone devices.

[2] The defendant shared, among other files, "x_59a98225," an image which depicts a prepubescent girl under the approximate age of 10 with her limbs bound and genitals exposed.

[3] One of the files was "Best 1 yo baby kim," a video, approximately 42 seconds in length, in which an adult male engaged in sexual contact with a child who is approximately two years old.

[4] As charged in the indictment, the defendant also shared files "20150825_132447000_ios," and "Wespank 168," both of which contained child pornography, on March 15, 2019 and March 18, 2019, respectively.

periodically sexually abused. (PSR ¶ 11). The defendant requested photographs of the children on multiple occasions, and the undercover agent sent the defendant photographs that the undercover agent claimed depicted his children. (Id. ¶ 16). On March 11, 2019, the defendant stated, among other things, that he wanted to "spank the 3 year old." (PSR ¶ 13). On March 15, 2019, the defendant stated that he wanted to "spank and fuck" the children. (PSR ¶ 14).

The defendant also suggested meeting up with the undercover agent to engage in sexual contact with the undercover agent's children. On March 28, 2019, the defendant asked the undercover agent to "plan a daddy fun day next week so I can have fun with them" and noted he was available Wednesday through Friday of the week of April 1, 2019. (PSR ¶ 16). The undercover agent and the defendant subsequently agreed to meet at the defendant's house on April 3, 2019. (PSR ¶ 18). In advance of the meeting, the defendant asked, "what are my limits what can I do and not do with your daughter," and stated, among other things, that he wanted to "spank her play with her ass and pussy and fuck her." (Id.). At the undercover agent's suggestion, the defendant advised that he would buy Haribo gummy bears as a gift for the girl and that he had "lube and condoms" and would buy "ZZZ quill," a sleep aid. (Id.).

On April 2, 2019, the Honorable Roanne L. Mann signed a warrant authorizing the search of the defendant's residence. (PSR ¶ 19; 19-M-305). On April 3, 2019, after the defendant reached out to confirm that the undercover agent and his daughter would be coming, FBI agents arrived at the defendant's residence to execute the search warrant. (PSR ¶ 19). The defendant, at the undercover agent's request, stepped outside to his front stoop and waived a stuffed animal, which the undercover agent suggested that he provide for the fictitious child. (Id.). FBI agents then announced themselves and conducted the search. (Id.). During the search, FBI agents recovered, among other things, a laptop computer displaying open files containing child pornography, multiple hard drives, multiple cellular telephones, a receipt for Haribo gummy bears, and condoms. (Id.).

In total, a forensic examination revealed that the electronic devices seized from the defendant contained approximately 168,963 images and 5,540 videos depicting child pornography and child erotica. (PSR ¶ 21). The files included images of infants and children nude and being sexually abused; young children with their arms and legs bound; and children being sexually penetrated and spanked by adults. (Id.). Additional review of accounts associated with the defendant's devices revealed that the defendant also traded child pornography with others and purchased child pornography using various websites and cloud storage and file sharing services. (PSR ¶ 22).

During the execution of the search warrant, the defendant participated in a voluntary interview inside his residence. (PSR ¶ 20). The FBI agents read the defendant Miranda warnings and the defendant acknowledged that he understood them. (PSR ¶ 20). During the interview, the defendant admitted, among other things, that he was KIK account user Sega628, that he possessed child pornography, and that he has been trading child pornography for approximately 16 years. (Id.). The defendant further admitted that he had previously paid to access child pornography collections of others. (Id.). The defendant described himself as a "closet pedophile," and admitted that on April 3, 2019, he intended to "finger" the "pussy" of the undercover agent's fictitious daughter. (Id.).

3

On April 3, 2019, following the search, the defendant was arrested and arraigned on a criminal complaint before the Honorable Roanne L. Mann. (Dkt. No. 2). On April 17, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B) (Count One); one count of attempted coercion or enticement of a minor to engage in illegal sexual activity, in violation of Title 18, United States Code, Section 2242(b) (Count Two); and three counts of distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). (Dkt. No. 27). On September 15, 2021, the defendant pleaded guilty before the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, Eastern District of New York, to Counts Three through Six of the indictment, charging distribution of child pornography, pursuant to a plea agreement.[5] (Dkt. No. 49).

II. <u>Guidelines Calculation</u>

The Probation Department calculated the defendant's applicable Guidelines range as follows:

| | | |
|---|---|---:|
| Base Offense Level (§ 2G2.2(a)(2)) | | 22 |
| Plus: | Material Involves Prepubescent Minor(s) (§ 2G2.2(b)(2)) | +2 |
| Plus: | Defendant engaged in distribution other than distribution described in subdivisions (A) through (E) of § 2G2.2(b)(3) (§ 2G2.2(b)(3)) | +2 |
| Plus: | Images Involved Infants and Children Being Penetrated, and Material that Portrays Sadistic or Masochistic Conduct or Other Depictions of Violence (§§ 2G2.2(b)(4)(A) and (B)) | +4 |
| Plus: | Use of Computer (§ 2G2.2(b)(6)) | +2 |
| Plus: | Offense Involved 15,000 or More Images (§ 2G2.2(b)(7)(D)) | +5 |
| Less: | Acceptance of Responsibility | -3 |
| Total: | | <u>34</u> |

---

[5] In light of the defendant's guilty plea before a magistrate judge, the government respectfully requests that the Court accept the defendant's guilty plea before imposing a sentence.

(PSR ¶¶ 33-46). Because the defendant falls within Criminal History Category is I, the applicable Guidelines range is 151 to 188 months imprisonment. (PSR ¶ 109). The mandatory minimum term of imprisonment is five years. 18 U.S.C. § 2252(b).

   III.   Sentencing Law

The standards governing sentencing are well-established. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007).

Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." Booker, 543 U.S. at 252; see also United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345-46 (2016) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

In light of Booker, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. See Crosby, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court

5

must consider whether a departure from that Guidelines range is appropriate. See Crosby, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

IV. Argument

The government respectfully submits that a substantial imprisonment term below the Guidelines range of 151 to 188 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. § 3553(a).

There is no denying the severity of the conduct at issue in this case. Child pornography crimes represent the continuing victimization of the children depicted in the underlying images, which are in essence, crime scene images. Possession of videos and images of abuse, alone, fosters a market for more abuse. See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." United States v. Williams, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," New York v. Ferber, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, Osborne v. Ohio, 495 U.S. 103, 110 (1990).

Here, the defendant was found to have had over a hundred thousand videos and images of child pornography in his possession, many of which displayed infants and toddlers, sadomasochism, and penetration. Furthermore, the defendant was not a passive possessor of child pornography; to the contrary, he admitted that he has actively engaged in collecting child pornography for well over a decade, and in his communications with the undercover agent, the defendant demonstrated a willingness to share hundreds of images of child pornography with a virtual stranger, motivated in part by the possibility that he may through the stranger gain access to young children. Finally, the defendant undertook affirmative steps to plan and carry out the abuse of the undercover agent's fictitious daughter, whom he believed was ten years old, including purchasing gummy bears, condoms and over-the-counter medication designed to put the child to sleep. Such conduct shocks the conscience and warrants a severe punishment to reflect the seriousness of the offense, to provide just punishment for the offense, and to afford adequate deterrence to the defendant and others contemplating similar acts. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).



6



In light of the of all of these factors, a substantial imprisonment term below the applicable Guidelines range would properly reflect the seriousness of the defendant's conduct and the need to deter the defendant and others from engaging in similar acts while also accounting for the history and characteristics of the defendant.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A), and (a)(2)(B).

V.   Conclusion

For the foregoing reasons, the government respectfully submits that substantial imprisonment term below the Guidelines range of 151 to 188 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/  Gillian Kassner
Gillian Kassner
Andrew D. Grubin
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (BMC) (by ECF)
Andrea Zellan, Esq. (by ECF)
Gregory Giblin, Probation Department (by email)